IRVING BANK-COLUMBIA TRUST COMPANY, APPELLANT, *v.*
REGISTRAR OF CAGUAS, RESPONDENT.

APPEAL from a Decision of the Registrar of Property Refusing to Record a Loan Contract.

No. 607.—Decided December 22, 1924.

CONTRACT—RECORD OF CONTRACT—AGRICULTURAL FINANCING—LOAN.—A contract by which a banking corporation lends a certain sum of money to another corporation which does not engage in cultivating sugar cane, but only in manufacturing sugar therefrom, can not be considered as a contract for agricultural financing as defined by Act No. 37 of 1910; therefore, the registrar did not err in refusing to record it as such.

The facts are stated in the opinion.

*Messrs. J. H. Brown* and *C. Ruiz Nazario* for the appellant.

The respondent appeared by brief.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

On October 3, 1924, in the city of San Juan, Porto Rico, the Caguas Sugar Co., Inc., and the Irving Bank-Columbia Trust Co. entered into a contract by which the latter corporation lent to the former $250,000 "for financing the cultivation of the sugar cane of the planters having contracts with the said Caguas Sugar Co., Inc., and the expenses necessary for manufacturing sugar in its factory called 'Central Defensa' * * * during the coming season of 1924-25."

In the contract it is stated that the Caguas Sugar Co., Inc., is the owner of a lease for 90 years made in favor of

the Central Defensa, Inc., on a tract of 14 acres of land in Caguas on which are the buildings, machinery and structures which constitute the sugar factory called Central Defensa. It is also stated that as a part of its business of manufacturing sugar the Caguas Sugar Co., Inc., had entered into a great number of contracts for financing and grinding sugar cane with proprietary planters by which it agreed to advance to them sums of money for the cultivation of their land, the advances being secured by the products.

The contract specifies the manner in which the loan shall be paid and the security for its payment is stipulated as "a first and preferred lien  *  *  *  on all the sugar belonging to or that may belong to the said debtor as industrial profit from the grinding of the sugar cane of its contracted planters  *  *  *." As collateral security the debtor assigned to the creditor "whatever rights and interests it has or may have in the contracts for financing and grinding sugar cane entered into with the planters, granting and assigning also  *  *  *  all amounts advanced  *  * ·  *  to the said planters  *  *  *."

The sixth clause of the contract reads as follows:

"Sixth.—The parties stipulate that this loan, or any part of it that at any time may be delivered to the Caguas Sugar Co., Inc., in consideration of the purposes for which it is intended, without taking into account the actual use made of it by the Caguas Sugar Co., Inc., shall be considered as an agricultural financing advance and shall enjoy, from the time of its delivery, all preferences and privileges given to agricultural advances by our laws and especially by the Act of March 10, 1910, to provide for contracts of advances for agricultural purposes and grinding of cane and its subsequent amendments."

The contract was presented for record in the Registry of Property of Caguas and the registrar refused to record it because it was not, in his opinion, "an agricultural loan contract as defined in section 1 of Act No. 37 of March 10, 1910."

The creditor then took the present appeal. Both the appellant and the registrar have set out their points of view at length in briefs, but without citing any jurisprudence. The decision of this court will depend upon the construction of the law which both parties agree should govern the case, that is, Act No. 37 of 1910, Compilation of 1911, page 11.

The title of the Act is as follows: "An Act to Provide for Contracts of Advances for Agricultural Purposes and Grinding of Cane, and for other Purposes."

Section 1 of the Act reads as follows:

"A contract of advances for agricultural purposes is one under which one of the parties thereto turns over and the other party receives, subject to reimbursement, a certain amount of money in cash or specie (*sic*), whether in a lump sum or in successive instalments, with which to meet the expenses of administration, maintenance, cultivation or improvements *of rural properties, the products of said properties* being answerable and liable for the repayments of the amounts so received, with interest agreed to thereon.

"The installation and restoration of buildings and machinery *for agricultural and industrial purposes in connection with plantings within the area of the property* may be comprised in the contract as an object thereof.

"The parties, furthermore, may set forth in the contract such legal covenants as they may deem proper." (Italics volunteered.)

Section 2 is as follows:

"The payments of the amounts received by the *landholder* shall be stipulated to be either in cash or in the kind of *product grown on the property for which the advance is made,* within such term as may be fixed by the contracting parties." (Italics ours.)

And section 5 provides that "contracts for the grinding of cane shall be such as are entered into by and between sugar factories or mills and the so-called 'colonos,' owners, possessors, lessees or sublessees of properties devoted in whole or in part to the cultivation of cane, for the sale or grinding of cane and for the manufacture or sale of sugar."

Provision is made also in the Act for the manner of executing and recording the said contracts and for their modification and assignment, specifying the preference given to the credits involved in them.

Repeatedly the lawmakers designate the debtor as "landholder" and there is no doubt from the Act as a whole that they had in mind loans made to persons engaged in the cultivation of land.

Is the debtor in this case such a person?

It is evident that the transaction has something to do with the cultivation of the land and that the money lent and used for the purchase and upkeep of machinery, the construction and repair of buildings, the payment of laborers and employees and for the expenses of transportation would ultimately be used for manufacturing sugar from sugar cane, which is a product of the soil. And it is clear that as the intention of the Legislature was to stimulate agricultural production by providing the fullest security for money, which is naturally timid, the said contract fulfills that purpose. But notwithstanding this and the necessity of extending liberality to this class of cases in which both parties petition for the record of the contract, which would not prejudice the rights of third persons in case of conflict, as such conflict would have to be decided by the courts, we feel constrained to affirm the decision appealed from.

It is not a case for the registrar or for this court, but for the Legislature. Under the terms of the Act as it is today the products of industrial enterprises can not be included. It would be necessary to add to the law in order that it might cover a contract like that entered into by the Irving Bank-Columbia Trust Company, and that can be done only by the Legislature.

The Caguas Sugar Company, Inc., is not engaged in agriculture. It plants no sugar cane, but simply grinds it and manufactures sugar from its juice. The contracts entered into by the Caguas Sugar Company, Inc., are for

agricultural loans and they were assigned to the creditor. This appeal has nothing to do with the recording of them. In order to secure the part that may belong to the debtor in the industrial profits the creditor may be able to find some other remedy in the law, but while the special Act governing the matter stands as it is today the means available will not be to consider the contract as an agricultural loan and to record it in the registry.

The decision appealed from must be

*Affirmed.*

Justices Wolf, Aldrey, Hutchison and Franco Soto concurred.